Meyer **FELDMAN**, Appellant,

v.

Wilson B. **WOOD**, Director of Internal
Revenue for Arizona, Appellee.

No. 18908.

United States Court of Appeals
Ninth Circuit.

Aug. 5, 1964.

David W. Richter, Whitehill, Feldman
& Scott, Tucson, Ariz., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen.,
Lee A. Jackson, David O. Walter, Edward B. Greensfelder, Jr., Norman Sepenuk, Attys., Dept. of Justice, Washington, D. C., and C. A. Muecke, U. S. Atty.,
Jo Ann Diamos, Asst. U. S. Atty.,
Tucson, Ariz., for appellee.

Before MADDEN, Judge of the Court
of Claims, and MERRILL and DUNIWAY, Circuit Judges.

MERRILL, Circuit Judge.

Appellant taxpayer has brought this
suit for refund of income taxes claimed
by him and denied by appellee. The
question presented is whether taxpayer
has suffered a loss under § 165 of the Internal Revenue Code of 1954,[1] by virtue
of the demolition of buildings by taxpayer's lessee pursuant to permission to demolish granted by the lease.

On June 1, 1955, taxpayer entered into
a 99-year lease of the subject property,
which included a warehouse and a filling
station, having a remaining useful life
of approximately 25 years. The lease
provided:

"11. Lessee shall have the right
to remove and demolish any or all
existing improvements on the demised premises for the purpose of
creating additional parking area,
adding improvements, or providing
ingress and egress to and from
Toole Avenue, any such demolition
and/or new improvement to be entirely at the expense of Lessee,
\* \* \*."

1. "§ 165, Losses
"(a) General rule—There shall be allowed as a deduction any loss sustained

during the taxable year and not compensated for by insurance or otherwise."

The lessee was given an option to purchase the leased premises for $160,000. In 1960 the option was exercised.

In 1957 the buildings were demolished. At that time they had an unrecovered cost basis of $47,300. In his 1957 Federal income tax return, taxpayer claimed a deduction by virtue of the demolition. The deduction was disallowed and appellee assessed $29,558.32 in tax deficiencies against taxpayer. This sum was paid. A timely claim for refund was made, and upon its denial this suit was brought. The district court rendered judgment for appellee and this appeal followed.

The position of appellee in support of the district court judgment is that if demolition or the right to demolish is bargained for and forms a part of the consideration for the lease, the lease replaces the asset of the demolished building; that while the value of the demolished buildings may be shown as an expense of the lease's acquisition and amortized over the period of the lease term, no loss under § 165(a) has been incurred.

The trouble is that this is not what the Treasury Regulations say. Regulation 1.165–3 deals with allowance of loss on demolition in the course of trade or business, or in a transaction entered into for profit. Subparagraph (b) (2) deals with the situation before us. It provides:

"If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof."

Thus, unless the demolition is "pursuant to the requirements" of the lease, the loss sustained is allowed.[2]

Appellee contends that "requirements" should be read to include permission. This simply is not the meaning of the word. A right to do an act is far different from a requirement to do it.

Appellee protests that to confine the language to cases where demolition is required and to exclude cases where it is permitted is to allow the deduction in cases where no economic loss is actually sustained. He points to the facts here that the lease term far outlasted the remaining useful life of the building, and that following the demolition rentals payable to taxpayer remained the same. This demonstrates, he urges, that taxpayer as lessor had no interest in the buildings that could be the subject of a "loss" when they were demolished; that instead upon commencement of the lease taxpayer substituted a new asset, the lease, for the old assets, the buildings.

■■ We cannot agree with this reasoning. Taxpayer, having erected the buildings, had a capital investment in them and, despite the lease, remained the owner of these improvements. On a default by the lessee, taxpayer would again possess them. Notwithstanding the fact that a lease period may exceed the useful life of the improvements leased, the owner is permitted by law to depreciate his unrecovered cost basis.[3] It is clear that in this instance the owner is regard-

---

2. Subparagraph (b) (1) states:
   "Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished."

3. Regulation 1.167(a)-4; Alaska Realty Co. v. Commissioner (6 Cir. 1944) 141 F.2d 675 (99-year lease) ; St. Paul Union Depot Co. v. Commissioner (8 Cir. 1941) 123 F.2d 235, 238 (dictum) (99-year lease) ; see 4 Mertens, Law of Federal Income Taxation (1960 rev.) § 23.89.

ed as having retained his capital investment in the leased improvements.

The question, then, is not whether demolition is economically advantageous or disadvantageous to the owner. (We can hardly conceive that an owner would agree to demolition unless he felt it to be to his financial advantage. The Code and Regulations must, then, contemplate that there will be occasions where a financially advantageous demolition may constitute a loss for tax purposes.) The question, rather, would seem to be whether the property demolished was then to be regarded as being used by the taxpayer in a trade or business or for production of income.

Prior to the adoption of the Regulation the test for this determination in the case of leased property appeared to be whether the demolition was necessary to "the purposes of the lease." Blumenfeld Enterprises Inc. v. C. I. R. (1955) 23 T.C. 665, 671, 672, as affirmed per curiam (9 Cir. 1956) 232 F.2d 396. If so, the land alone was regarded as productive of rental income. The unrecovered cost of the demolished building was to be treated as part of the cost of securing the lease and amortized over its term. See also: Young v. Commission (9 Cir. 1932) 59 F.2d 691, cert. denied (1932) 287 U.S. 652, 53 S.Ct. 116, 77 L.Ed. 563.

■ By the Regulation "purposes of the lease" has been superseded by "requirements of the lease." Not only does this provide the desirable attribute of certainty, but in our judgment the line as drawn cannot be said to be unreasonable.[4]

Where there is no commitment to demolish, the lease includes the right to put the buildings to beneficial use and a portion of the rental may well be attributed to them. It may well be said that they have not yet lost their status as income-producing property. The Regulation appears simply to shift emphasis upon the factual issue of intent. Of the many rights secured to the parties and presumably bargained for, stress is laid upon the right to put the property to beneficial use instead of upon the right to demolish it. Instead of inviting an examination into the possibility that something of value really was not important, the Regulation presumes that it was unless the parties have formally demonstrated in the manner specified that it was the land alone which was bargained for.

Accordingly we hold the Department to what we regard as the only acceptable construction of the language it has chosen.

Reversed and remanded, with instructions that judgment be entered for appellant.

---

4. "This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes * * *." Commissioner v. South Texas Lumber Co. (1948) 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831.