Dr. Thomas P. **FOLTZ** and **Eleanor Foltz,**
Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. No. FS–69–C–106.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Feb. 5, 1971.

Warner, Warner, Ragon & Smith by Ben L. Paddock, Fort Smith, Ark., for the plaintiffs.

Ben A. Douglas, Atty. Tax Division U. S. Dept. of Justice, Boyd A. Keathley, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

PAUL X. WILLIAMS, District Judge.

This is an action brought by the plaintiffs, Dr. Thomas P. Foltz and Eleanor Foltz, pursuant to the provisions of Title 28 U.S.C. § 1346(a) (1) to recover certain federal income taxes, paid by them for the year 1963. The cause is submitted to this Court without a jury upon the pleadings, stipulation of facts, depositions, discovery material, documentary exhibits and memorandum briefs.

The stipulation filed by the parties reflects that:

The plaintiff, Mrs. Eleanor Foltz, was and is the owner-lessor of the real property involved herein, and her husband, Dr. Thomas P. Foltz, is joined as a plaintiff only because they filed a joint federal income tax return for the calendar year in question, 1963.

Mrs. Foltz acquired the property involved by inheritance in 1946 and situated thereon was a brick office building, known as the Kennedy building. As of 1946, the value of the office building was determined to be $40,000.00 for income tax purposes and its useful life, for depreciation purposes, was established at 33⅓ years.

From 1946 until February, 1962, the office building was held as business rental property with space therein being rented to various tenants. By written lease, effective February 1, 1962, Mrs. Foltz leased the entire office building to the First National Bank of Fort Smith, Arkansas. In September 1963, the lessee, First National Bank, caused the said office building to be demolished, pursuant to its right to demolish as set forth in the lease. The lease was made a part of the stipulation and the provision in the lease concerning demolition reads as follows:

"Lessee shall have the right to demolish and raze all or any part of the structure now on the leased premises at its own expense."

It was further stipulated that the plaintiffs timely filed their joint federal income tax return for the year 1963 and claimed therein a deduction for a demolition loss in the amount of $19,600.00, the remaining undepreciated tax basis in

the office building. The Internal Revenue Service audited the plaintiffs' 1963 income tax return and disallowed the deduction for the claimed demolition loss. The Internal Revenue Service did allow the plaintiffs a deduction representing the Internal Revenue Service's determination of the depreciation and amortization applicable to the tax year 1963, calculated on the amount of the plaintiffs' undepreciated basis in the office building being amortized over the remaining life of the lease.

The plaintiffs were assessed a deficiency in tax for 1963 in the total amount of $8,528.93, plus $1,633.32 in interest, which amounts were paid by plaintiffs on August 11, 1967. Plaintiffs duly filed with the District Director of Internal Revenue for the District of Arkansas, a timely claim for refund, which claim was thereafter denied.

The plaintiffs subsequently timely filed this action seeking recovery from the defendant of the sum of $8,528.93, or such other amounts as might appear to be due them, together with the interest paid by plaintiffs and such other interest thereafter accruing as provided by law.

The question for the Court's determination is whether the plaintiffs are entitled to a demolition loss deduction in the year 1963 as a result of the demolition by the lessee of the office building it had leased from the plaintiffs on February 1, 1962.

The relevant portions of the statutes and regulations involved are:

Internal Revenue Code of 1954 (26 U.S. C.):

"§ 165 Losses.

(a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\*      \*      \*      \*      \*      \*

Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.):

"§ 1.165–3 *Demolition of buildings.*

(a) *Intent to demolish formed at time of purchase.* (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of § 1.167(a)–5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition.

\*      \*      \*      \*      \*      \*

"(b) *Intent to demolish formed subsequent to the time of acquisition.* (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. \*    \*    \*.

"(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from

demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof."

The Government's position is that upon considering "the entire transaction and negotiations between the parties, it is apparent that the parties were aware of the possibility, if not probability, of the demolition of the Kennedy building. Such demolition was sufficiently within the contemplation of the parties at the time the lease was consummated that the provision authorizing it was an essential underlying condition to the arrangement. As such, the plaintiff must amortize her undepreciated basis in the Kennedy building over the fifteen-year term of the lease, since that basis is deemed to represent a cost of acquiring the lease with the First National Bank of Fort Smith."

Citing in support of this position, Herman Landerman, et al., 54 T.C. 1042 (1970). In this case the Tax Court held that the lessor was not entitled to the demolition deduction, stating:

"In short, we hold that respondent's regulations were intended to encompass an examination of whether demolition was sufficiently within the contemplation of the parties at the time the lease arrangements were made that it can be said that the demolition was an essential underlying condition of those arrangements.

\* \* \* \* \* \*

In the instant case, as our findings of fact reveal, the demolition of existing building and the disposal of its contents were an integral element of the bargaining between the parties to the lease and at all times considered by them as an underlying condition of the lease. The fact that such demolition and disposal were begun very soon after the commencement of the term of the lease and completed with dispatch tends to confirm our findings."

The plaintiffs' contention is that the demolition was not made "pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease;" and therefore under the plain wording of Treasury Regulation 1.165–3(b) (2) they are entitled to the deduction. Furthermore, that even under the test enunciated in *Landerman*, supra, the demolition was not an essential or underlying condition of the lease and the deduction was proper.

We find the plaintiffs position sound as to both contentions. A review of the testimony in the depositions filed in this case reflects that the demolition was not an "essential underlying condition" of the lease as was true in *Landerman*, supra. The depositions indicate negotiations leading to the execution of the lease were between Mrs. Eleanor Foltz and Mr. McLoud Sicard, President of the First National Bank. Their testimony shows that demolition of the office building was not bargained for in the negotiations and was not an underlying purpose, condition or requirement of the lease or an agreement which resulted in the lease. In entering into the lease, neither party thereto intended or contemplated that the office building would necessarily be demolished during the term of the lease.

The provision granting the lessee bank the right to demolish was included in the lease at the request of the bank, upon the suggestion of its counsel, as a protective provision in view of the possible long term nature of the lease arrangements which provided for a term of 15 years with the option in the bank to renew for two additional 15 year periods. At the time of entering into the lease, and for a substantial time thereafter, the lessee bank did not intend to use the leased property for purposes pursuant to which the demolition of the office building would be necessary or necessarily desirable. The purpose and intention of the lessee bank in entering the lease was simply to assure itself of additional adjacent ground floor space for any future expansion of its facilities. We find the testimony of both Mrs. Foltz and Mr. Sicard in complete accord on these points.

In his deposition Mr. William A. Baker, Vice-President of the First National Bank also testified that the bank wanted the "right to demolish in the interest of good long range planning."

The office building, though old, was in good condition and was good business rental property at the time of the lease, substantial repairs having recently been made by Mrs. Foltz which included redecorating and the installation of furniture and fixtures. Furthermore, Mrs. Foltz was advised by the bank that she must leave these things as it intended to use them.

Mr. William H. Larson was the general contractor who worked for the First National Bank in the design and construction of the teller's facilities next to the bank. He testified that he was employed to make a study of the feasibility of constructing and using a tunnel from the bank to the building leased from Mrs. Foltz. He had several conversations with Mr. Sicard regarding this possibility, indicating that Mr. Sicard had not planned demolition of the building then. After making the study Mr. Larson reported to Mr. Sicard that the tunnel would not be feasible and it was sometime after his report that the demolition work started on Mrs. Foltz's building.

The Government relies on testimony from other parties to the effect that they had heard the Kennedy building was going to be demolished. However, none of these parties had any actual knowledge of the negotiations preceding the execution of the lease in question. Most of their testimony seemed to be based upon just "general talk" as one of the witnesses expressed it.

Prior to entering negotiations with the First National Bank, Mrs. Foltz had been negotiating with the Parking Authority of Fort Smith which proposed to lease the building, promptly demolish it, and construct a multi-story parking facility. This proposal received coverage in the local news media, and it was assumed by many persons, including some of Mrs. Foltz's tenants, that demolition of the building would occur. However, no agreement with the Parking Authority was ever made. The fact that the proposed lease with the Parking Authority would have called for mandatory and prompt demolition does not support the theory that Mrs. Foltz and the First National Bank entered into a lease with the intention of demolition. It is significant to note that in negotiating with the Parking Authority, Mrs. Foltz had insisted upon the right to remove furniture and fixtures, but no such agreement was reached between Mrs. Foltz and the Bank; instead Mrs. Foltz agreed to and did lease these furnishings and fixtures as a part of the building for the use of the lessee-Bank. After demolition of the Kennedy building, the Bank made substantial improvements which have been treated taxwise as assets of the Bank.

We find Feldman v. Wood, 335 F.2d 264 (9th Cir. 1964) to be controlling in this case. We recognize that the Tax Court refused to follow *Feldman* in the *Landerman* case, supra, but we find the rationale of the Ninth Circuit Court as expressed in the *Feldman* case to be more persuasive than the reasoning of the Tax Court. No other District Court or Circuit Court of Appeals opinion involving this issue has been cited to us and our research has revealed none. Therefore we feel compelled to follow the decision of the Ninth Circuit rather than that of the Tax Court. The same Treasury Regulation and almost the same demolition provision in the lease were considered in the *Feldman* case as are before us for consideration in the case at bar. We also note that the same arguments were presented by the Government in that case as are presented herein, and they were rejected in the *Feldman* case.

The taxpayer in *Feldman* entered into a 99 year lease of his land and buildings on June 1, 1955. The buildings had a remaining useful life for depreciation purposes of approximately 25 years.

The lease contained the following provision:

"Lessee shall have the right to remove and demolish any or all existing improvements on the demised premises for the purpose of creating additional parking area, adding improvements, or providing ingress and egress to and from Toole Avenue, any such demolition and/or new improvement to be entirely at the expense of Lessee. * * * "

In August of 1957 the lessee demolished the building and the lessor claimed a deduction in the year 1957 for the full undepreciated basis of the demolished buildings. In reversing the lower Court and holding that the taxpayer was entitled to this deduction, the Court of Appeals for the Ninth Circuit stated:

"The position of appellee in support of the district court judgment is that if demolition or the right to demolish is bargained for and forms a part of the consideration for the lease, the lease replaces the asset of the demolished building; that while the value of the demolished buildings may be shown as an expense of the lease's acquisition and amortized over the period of the lease term, no loss under § 165(a) has been incurred.

"The trouble is that this is not what the Treasury Regulations say. Regulation 1.165–3 deals with allowances of loss on demolition in the course of trade or business, or in a transaction entered into for profit. Subparagraph (b) (2) deals with a situation before us. It provides:

"If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. * * *"

"Thus, unless the demolition is 'pursuant to the requirements' of the lease, the loss sustained is allowed.

"Appellee contends that 'requirements' should be read to include permission. This simply is not the meaning of the word. A right to do an act is far different from a requirement to do it.

"Appellee protests that to confine the language to cases where demolition is required and to exclude cases where it is permitted is to allow the deduction in cases where no economic loss is actually sustained. He points to the facts here that the lease term far outlasted the remaining useful life of the building, and that following the demolition rentals payable to taxpayer remained the same. This demonstrates, he urges, that taxpayer as lessor had no interest in the buildings that could be the subject of a 'loss' when they were demolished; that instead upon commencement of the lease taxpayer substituted a new asset, the lease, for the old assets, the buildings.

"We cannot agree with this reasoning. Taxpayer, having errected the buildings, had a capital investment in them and, despite the lease, remained the owner of these improvements. On a default by the lessee, taxpayer would again possess them. Notwithstanding the fact that a lease period may exceed the useful life of the improvements leased, the owner is permitted by law to depreciate his unrecovered cost basis. It is clear that in this instance the owner is regarded as having retained his capital investment in the leased improvements."

Noting the well established principle that Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the Revenue Statutes, the Court in *Feldman* stated:

"By the Regulation 'purposes of the lease' has been superseded by ' requirements of the lease.' Not only does this provide the desirable attribute of certainty, but in our judgment the line as drawn cannot be said to be unreasonable.

"Where there is no commitment to demolish, the lease includes the right to

put the buildings to beneficial use and a portion of the rental may well be attributed to them. It may well be said that they have not yet lost their status as income-producing property. The Regulation appears simply to shift emphasis upon the factual issue of intent. Of the many rights secured to the parties and presumably bargained for, stress is laid upon the right to put the property to beneficial use instead of upon the right to demolish it. Instead of inviting an examination into the possibility that something of value really was not important, the Regulation presumes that it was unless the parties have formally demonstrated in the manner specified that it was the land alone which was bargained for.

"Accordingly, we hold the Department to what we regard as the only acceptable construction of the language it has chosen."

Furthermore, we think it is significant that even though the Treasury Department has been fully cognizant since 1964 of the Ninth Circuit Court of Appeals' interpretation of Treasury Regulation 1.165–3, as indicated by the *Feldman* decision, the Department has made no change in the Regulation.

The holding of the Court in *Feldman* is that the demolition deduction is available in the absence of a binding provision for mandatory demolition either in the lease itself, or, in a collateral agreement which resulted in the lease.

The gist of the matter is succinctly stated in Vol. 4 Mertens Law of Federal Income Taxation, § 23.89 on Page 235:

"The Regulations under the 1954 Code hold that the owner of leased premises on which *the lessee had a right to demolish buildings* in order to construct other improvements *may deduct* as a loss his basis for the buildings demolished by the lessee. Where the demolition is 'pursuant to the requirements of a lease' *no loss is allowable*." (Emphasis added.)

In light of the foregoing we find that the plaintiffs Dr. Thomas P. Foltz and Eleanor Foltz are entitled to a deduction under the Internal Revenue Code of 1954, Section 165 and the pertinent Treasury Regulations, for the year of demolition, 1963, in the amount of plaintiffs then remaining undepreciated basis in the office building of $19,600.00.

It is hereby ordered that the plaintiffs and defendant shall within 15 days from this date stipulate a form of final judgment in favor of the plaintiffs and present same to this Court.