Robert B. HIGHTOWER and Rossell M. Hightower (husband and wife), Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 69-299-Civ-J.

United States District Court, M. D. Florida, Jacksonville Division.

March 1, 1971.

William R. Frazier, Jacksonville, Fla., for plaintiffs.

Rodger M. Moore, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM A. McRAE, Jr., Chief Judge.

This case was submitted to the court for consideration and decision by counsel for the parties based upon a completely stipulated record. Plaintiffs filed this action in an effort to recover deficiencies in Federal income tax and interest for the calendar years 1961 and 1964. The sole issue involves a question of whether or not Plaintiffs are

entitled to deduct a loss arising from the demolition of three buildings owned by them in 1964 in the amount of $50,564.18 pursuant to Section 165(a) of the Internal Revenue Code and Treasury Reg. § 1.165–3(b)(1) and (2). From the pleadings, stipulation of facts, documentary exhibits, oral arguments and written briefs of counsel, the Court makes the following:

*Findings of Fact*

1. This is a suit for refund of personal income tax deficiencies and interest for the calendar years 1961 and 1964 brought by Plaintiffs, Robert B. Hightower and Rossell M. Hightower, husband and wife.

2. Plaintiffs seek recovery for the income tax deficiencies and interest paid by them as follows:

| Year | Deficiency | Interest |
|------|-----------|----------|
| 1961 | $ 5,049.73 | $ 870.07 |
| 1964 | 4,856.02 | 752.68 |

3. Plaintiffs are individuals who presently reside at Green Cove Springs, Clay County, Florida.

4. Plaintiffs during the calendar years 1961 through 1964, inclusive, were residents of the State of Virginia, having subsequently changed their residence to the State of Florida.

5. On or about April 15, 1962, Plaintiffs filed with and in the office of the District Director of Internal Revenue for the District of Virginia at Richmond, Virginia, their personal income tax return, Treasury Form 1040, for the calendar year 1961 and duly paid to the said District Director the tax shown on said return to be due and owing by Plaintiffs to the United States Government within the time and manner prescribed by law.

6. On or about April 15, 1965, Plaintiffs filed with and in the office of the District Director of Internal Revenue for the District of Virginia at Richmond, Virginia, their personal income tax return, Treasury Form 1040, for the calendar year 1964 and duly paid to the said District Director the tax shown on said return to be due and owing by Plaintiffs to the United States Government within the time and manner prescribed by law.

7. In 1965, Plaintiffs filed with the Commissioner of Internal Revenue an application for tentative carryback adjustment to the calendar year 1961, growing out of a net operating loss suffered by them in 1964.

8. The net operating loss carryback from 1964 to the calendar year 1961 was claimed as a net operating loss deduction in the amount of $16,979.53. The Commissioner tentatively allowed the carryback adjustment to the calendar year 1961.

9. The Commissioner upon subsequent audit of the Plaintiffs' returns filed by them for both the year 1961 and 1964 disallowed the application for tentative carryback adjustment from 1964 to 1961.

10. On or about October 31, 1967, the Commissioner, acting through the Chief of the Appellate Branch at Jacksonville, Florida, issued a statutory notice setting forth a deficiency for the calendar year ended December 31, 1961, in the amount of $5,049.73, which resulted from the disallowance of the tentative carryback adjustment to said year. The Commissioner also determined in said statutory notice that there was an alleged deficiency due from Plaintiffs for the taxable year ended December 31, 1964, in the amount of $4,856.02.

11. Following the issuance of the statutory notice of deficiency, the Commissioner in due course assessed the alleged additional income tax and accrued interest thereon, said assessments being paid in full by Plaintiffs to the United States Government in two installments, one on November 15, 1967, and a second on July 18, 1968.

12. On October 18, 1968, Plaintiffs filed claims for refund for said deficiencies in tax and accrued interest thereon with respect to the calendar years 1961 and 1964 in the total respec-

tive amounts of $5,919.80 and $5,608.70, plus interest on said claims as allowed by law.

13. More than six months passed from the date upon which Plaintiffs filed the said claims for refund, and the Commissioner of Internal Revenue had failed or refused to act with respect thereto.

14. Plaintiffs thereafter instituted this refund action on April 23, 1969.

15. For many years prior to 1963, the Plaintiff, Robert B. Hightower, had been a practicing physician in Alexandria, Virginia.

16. During those years, the Plaintiffs had acquired, by purchases in 1943, 1952, and 1961, three adjoining parcels of real estate located at the intersection of Cameron and North Washington Streets in Alexandria, Virginia, and commonly known as 619 Cameron, 201–203 North Washington, and 205 North Washington Streets.

17. There were located on those premises three row house buildings which were approximately 100 years old at the time of the purchases by the Plaintiffs.

18. The property was held by the Plaintiffs and used by them either in connection with Dr. Hightower's practice of medicine or for the production of rental income.

19. During 1963, Dr. Hightower had become physically incapacitated, and decided to retire from the active practice of medicine.

20. Sometime prior to August 20, 1963, negotiations commenced between Fidelity Building, Inc. (hereinafter referred to as the corporation), and agents of the Plaintiffs regarding the property, and on that day the Plaintiffs entered into a deed of lease with that corporation as lessee.

21. Prior to the execution of that deed of lease, there had been discussions between the Plaintiffs' agents and the corporation regarding demolition by the lessee of the structures then on the property and erection of a new building. At no time during the negotiations which led up to execution of the deed of lease did the Plaintiffs impose as a condition precedent that the prospective lessee be obligated to raze the existing buildings, but as a result of those negotiations, there were incorporated into the deed of lease provisions relating to demolition and construction of a new building.

22. It was known by the parties that the corporation desired to use the premises as a site for a related savings and loan facility and the parties were further aware that the corporation would not have entered into the deed of lease unless there were incorporated therein the provisions relating to demolition or unless there were a purchase option provision.

23. On August 20, 1963, Plaintiffs entered into a 99-year lease with respect to said property with Fidelity Building, Inc.

24. At the time the lease was executed, the three buildings then on the property had a remaining useful life of approximately twenty years.

In paragraph 1(e), the lease provided:

"The lessee, at the time of the commencement of the term hereof, shall have the right to demolish any and all structures or improvements presently existing on the herein demised premises, which demolition shall be accomplished at the sole cost of the lessee, but lessee shall not be obligated to pay the lessors any sums or other considerations other than the payment of the rent as hereinabove specified in, to, or concerning the demolition of the said improvements."

25. On February 5, 1964, possession of the premises was turned over to the lessee, and demolition of the buildings then located on the property proceeded forthwith. By April 2, 1964, those buildings had been razed, and Fidelity Savings and Loan Association, the assignee of the lessee, was proceeding

with excavation and construction of a new building on the premises, which was thereafter completed.

26. The three buildings which were on the demised premises at the time Plaintiffs purchased the property were demolished by the lessee in accordance with its option contained in the deed of lease in order to construct a new building on the premises. Lessee's new building was substantially more valuable than the buildings which were razed. At the time of demolition, Plaintiffs' unrecovered cost basis in the three buildings amounted to $50,564.18.

27. Pursuant to the terms of the lease, the lessee was granted the option to purchase the demised premises at or after the expiration of five years from the date of commencement of the original lease at a price of $23.15 per square foot of land in cash. The option to purchase was contained in paragraph 1(g) of the lease. On December 27, 1968, the lessee exercised the option to purchase and Plaintiffs conveyed the fee title to the property to Fidelity Savings and Loan Association, the original lessee's assignee.

28. Plaintiffs in filing their 1964 personal Federal income tax return claimed a loss on the demolition of the buildings in the amount of $50,564.18, as provided by Section 165 of the Internal Revenue Code and the Treasury Regulations issued pursuant thereto.

29. The demolition loss claimed on Plaintiffs' 1964 return caused a loss for said year, which Plaintiffs then claimed as a net operating loss carryback to the taxable year ended December 31, 1961.

30. The Commissioner made several other minor adjustments to Plaintiffs' 1964 return involving an excessive hurricane loss casualty deduction and reduction of excess expenses on Plaintiffs' South Ponte Vedra property. Plaintiffs have conceded the propriety of these adjustments.

## Discussion

1. Plaintiffs have instituted this action for the purpose of obtaining a refund of Federal income tax deficiencies and interest paid by them for the calendar years 1961 and 1964.

The only legal issue presented involves the question of whether or not Plaintiffs are entitled to deduct a loss in the amount of $50,564.18, resulting from the demolition of three buildings owned by them in 1964, which were demolished by Plaintiffs' lessee, as permitted by the terms of the lease, pursuant to Section 165(a) of the Internal Revenue Code of 1954 and applicable U. S. Treasury Reg., § 1.165–3(b)(1) and (2).

The relevant portion of the statutes and regulations involved are:

(Sec. 165)

*"Sec. 165. Losses.*

(Sec. 165(a))

(a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

[Source: Sec. 23(f), 1939 Code, substantially unchanged.]

(Sec. 165(b))

(b) Amount of deduction.—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

[Source: Sec. 23(i), 1939 Code, substantially unchanged.]

"§ 1.165–3. Demolition of buildings.

(a) *Intent to demolish formed at time of purchase.* (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is pur-

chased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of § 1.167(a)–5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition.

.    .    .    .    .    .

(b) *Intent to demolish formed subsequent to the time of acquisition.* (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of § 1.165–1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished.

(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a

part of the cost of the lease to be amortized over the term thereof."

2. The lease (denominated by the parties as "deed of lease") was dated August 20, 1963, between Plaintiffs as lessors and Fidelity Building, Inc., a Virginia corporation, as lessee, and granted the lessee the right to demolish any buildings on the demised premises.

Paragraph 1(e) of the lease provided:

"That the lessee, at the time of the commencement of the term hereof, shall have the right to demolish any or all structures or improvements presently existing on the herein demised premises, which demolition shall be accomplished at the sole cost of the lessee, but the lessee shall not be obligated to pay the lessors any sum or other consideration other than the payment of the rent as hereinabove specified in, to, or concerning the demolition of the said improvements."

3. The parties have stipulated that possession of the demised premises was given the lessee on February 5, 1964, and the lessee's demolition of the buildings then located on the premises proceeded forthwith. By April 2, 1964, the buildings had been razed.

4. The parties have further stipulated that at the time of the demolition of the buildings, Plaintiffs' unrecovered basis in the buildings amounted to $50,564.18. Plaintiffs in filing their personal Federal income tax return for the calendar year 1964 claimed a deduction in the amount of $50,564.18, as a demolition loss resulting from the razing of the buildings. The deduction of the demolition loss caused Plaintiffs to have a loss for said year which they carried back for the purpose of receiving a refund of taxes paid by them for the calendar year ended December 31, 1961.

5. Plaintiffs take the position that they are entitled to the demolition loss on the theory that there was no requirement of the lease that the tenant demolish the buildings, but to the contrary, that as was provided in paragraph 1(e)

of the lease, the tenant had the right or option at its election to demolish the buildings.

In support of their position, Plaintiffs rely on the decision of the United States Court of Appeals for the Ninth Circuit in Feldman v. Wood, 335 F.2d 264 (9th Cir. 1964), reversing an unreported opinion, D.Ariz.1963, 63–1 USTC ¶ 9428.

6. It is the Court's view that the Plaintiffs' case as a matter of law and fact is indistinguishable from the decision of the United States Court of Appeals for the Ninth Circuit in Feldman v. Wood. There has been no decision of the United States Court of Appeals for the Fifth Circuit on the direct legal question involved in this case. The Court, however, believes that the doctrine of the Ninth Circuit in Feldman v. Wood is sound and should be applied under the circumstances presented by this case.

7. The Court of Appeals in the Feldman case after quoting the provisions of Treasury Regulation § 1.165–3(b)(2), stated:

"Thus, unless the demolition is 'pursuant to the requirements' of the lease, the loss sustained is allowed.

"Appellee contends that 'requirements' should be read to include permission. This simply is not the meaning of the word. A right to do an act is far different from a requirement to do it."

The Government contends that Plaintiffs are not entitled to deduct the amount of the demolition loss where the demolition is an underlying condition of the lease, without regard to whether or not the lessee had merely the right or option to demolish the premises or was affirmatively required by the terms of the lease to demolish the buildings.

The Court believes that the rationale of the Feldman case in rejecting this contention is sound and that the demolition loss is allowable where effectuated by the lessee pursuant to an option, election or permission of the lease.

Secondly, the Government contends that the Plaintiffs-Lessors suffered no economic loss upon the lessee's demolition of the three buildings situated upon the leased property and are for this reason alternatively precluded from taking the loss deduction under Section 165.

The Court of Appeals for the Ninth Circuit in the Feldman case rejected this contention, and this Court does likewise.

Lastly, the Government contends that the deed of lease agreement involved looked "primarily" toward the sale of the property and that the only loss to which the plaintiffs would be entitled would be one at the time the sale was consummated, if the sales price were less than their adjusted basis.

The Court rejects this contention and construes the arrangement as a lease between the parties thereto, and not as a sale of real property.

8. The District Court for the Northern District of Georgia, Atlanta Division, in B. T. Holder and Georgia L. Holder v. United States of America, Civil Action No. 12240, 9/18/70, 70–1 USTC ¶ 9656, has also applied the doctrine of Feldman v. Wood in a case substantially identical to that of Plaintiffs', holding that the taxpayers were entitled to a demolition loss on buildings demolished by the tenant under a lease which does not require the demolition of the improvements.

The Court's attention has also been called to a recent case of Foltz v. United States of America, USDC West.Dist. Ark. Fort Smith Div. (1971), 322 F. Supp. 414. In the Foltz case, the District Court considered the Feldman case to be controlling and held that the owner of leased premises on which the lessee had the right to demolish a building in order to construct other improvements was entitled to deduct as a loss his undepreciated basis for the building demolished by the lessee.

9. The Tax Court in Herman Landerman et al. v. Commissioner, 54 T.C. No. 1042 (1970), in a case involving a factual situation quite similar to Plain-

tiffs' case, has declined to apply the theory of the Ninth Circuit in the *Feldman* case. The Tax Court refused to allow the taxpayer a demolition loss taken pursuant to the terms of the lease which provided that the tenant had the option to demolish. The Court is not impressed by the theory of the Tax Court in the *Landerman* case and its attempt to distinguish that case from the facts and legal conclusions reached by the Ninth Circuit in Feldman v. Wood.

10. The Court, therefore, holds that the Plaintiffs in this case are entitled to deduct the demolition loss claimed and are entitled to a refund of the deficiencies and deficiency interest sought to be recovered in this action, less such portion thereof, resulting from the other adjustments made by the Commissioner, the propriety of which has been conceded previously by Plaintiffs.

### Conclusions of Law

1. The Court has jurisdiction of this case pursuant to Section 1346(a)(1), Title 28, United States Code, as amended.

2. The demolition of the buildings in this suit was not effectuated by Plaintiffs' lessee "pursuant to the requirements of a lease or requirements of an agreement which resulted in a lease", within the meaning of United States Income Tax Regulations § 1.165–3(b)(2).

3. The demolition of Plaintiffs' buildings by the lessee was not done pursuant to an underlying condition of the lease within the meaning of Section 165 of the Internal Revenue Code of 1954 and the U.S. Income Tax Reg. § 1.-165–3(b)(2).

4. Plaintiffs are entitled to the demolition loss claimed by them in filing their personal income tax return for the calendar year ended December 31, 1964, and also the resultant net operating loss carryback to the calendar year ended December 31, 1961, in the amount of $50,564.18 in accordance with the provisions of Section 165(a) of the Internal Revenue Code and U. S. Treasury Income

Tax Regulations § 1.165–3(b)(2) with respect to the demolition of buildings on Plaintiffs' leased property by their tenant pursuant to permission granted by the lease.

5. In view of Plaintiffs' concession of the Commissioner's adjustment to their 1964 return involving an excessive hurricane loss deduction in the amount of $200.00, the disallowance of an excessive expense deduction—South Ponte Vedra property of $245.53, counsel for the respective parties are directed to submit to the Court within not more than 15 days from date a computation showing the amount of refund of tax and deficiency interest to which Plaintiffs are entitled for each of the calendar years involved. Counsel for the parties shall also concurrently therewith submit a proposed form of Final Judgment reflecting Plaintiffs' recovery of tax, interest and allowable costs, in accordance with these Findings of Fact and Conclusions of Law.