JOHN A. LEMOS and ROSEMARY S. LEMOS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Lemos v. Commissioner
Docket No. 5463-71
United States Tax Court
T.C. Memo 1973-117; 1973 Tax Ct. Memo LEXIS 172; 32 T.C.M. (CCH) 515; T.C.M. (RIA) 73117; May 22, 1973, Filed John A. Lemos, pro se. Barry J. Laterman, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for their taxable year 1966 in the amount of $3,369.44. The issues for our decision are: (1) Whether petitioners may deduct in full in 1966 their loss arising from the demolition of three old buildings, or whether the loss must be amortized over a 12-year period representing the term of a lease entered into prior to the demolition of the three old buildings, and 2 (2) whether petitioner is entitled to deduct in 1966, or must amortize over the 12-year term of the lease, the fee he paid to the real estate agents who assisted him in procuring the *173 lease. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner John A. Lemos resided at Centerville, Massachusetts and petitioner Rosemary S. Lemos resided at Osterville, Massachusetts at the time they filed their petition in this case. They were husband and wife in the taxable year 1966 but were divorced in 1967. Rosemary S. Lemos is now known as Rosemary Scudder Bowes. Petitioners filed a joint Federal income tax return for their taxable year 1966 with the district director of internal revenue, Boston, Massachusetts. Petitioner John A. Lemos, hereinafter referred to as petitioner, purchased in 1957 a lot on Main Street, Hyannis, Massachusetts, upon which were two buildings and a barn. Petitioner used part of one of the buildings for carrying on a florist business and rented the balance of that building at times as a residential apartment in the summers and it was vacant the remainder of the year. Until 1964 petitioner rented the other buildings to various persons for commercial purposes. In 1963 the fire department in Hyannis notified petitioner that the barn was such a hazard that persons would not be allowed to enter it. In *174 addition to his florist business, petitioner operated a real estate business in another town. 3 Sometime prior to February 1965 petitioner informed some of the real estate agents with whom he was acquainted that he was considering demolishing the three buildings on the lands he owned on Main Street in Hyannis and erecting some new stores. In February 1965 petitioner was approached by two real estate agents representing the Friendly Ice Cream Corp. (also known as Friendly Retail Routes, a Massachusetts Business Trust, hereinafter referred to as Friendly). Friendly desired to lease space in a building on Main Street in Hyannis for one of its ice cream parlor and sandwich shops. After Friendly's real estate acquisition manager was shown petitioner's property on Main Street, he authorized the two real estate agents to enter into preliminary negotiations for a lease with petitioner. The real estate agents representing Friendly told Friendly's real estate acquisition manager that they believed that petitioner would raze the buildings on his Main Street lot. Between February and May 1965 petitioner and representatives of friendly negotiated the terms of a lease. Friendly initially *175 wanted a free-standing building and the remainder of petitioner's lot as a parking lot but was not prepared to pay the rent which petitioner would rightfully demand for the total property. Friendly then agreed to rent one store of a four-store shopping center which petitioner would erect on the lot. Friendly insisted that the three existing buildings on petitioner's lot be razed so that Friendly could protect its corporate image of having its ice cream parlor and sandwich shops 4 designed in a colonial style of architecture. It would not have been feasible to build the four-store shopping center on the property without razing the old buildings. A lease agreement between petitioner and Friendly was executed on May 15, 1965. The lease provided in part: 1. The lessor hereby leases unto the Lessee the premises located on Main Street, Hyannis, Massachusetts, as outlined in red on the map annexed hereto, made a part hereof and marked Schedule "A", said demised premises consisting of a retail store of approximately two thousand two hundred and fifty (2,250) square feet (25" x 90;) of a building to be erected thereon by Lessor, together with the right to use the delivery area *176 and all means of egress and ingress within the shopping center for a term of twelve (12) years commencing as hereinafter provided upon the following terms, covenants and conditions. 2. Lessor agrees to erect certain premises at its own cost and expense, in accordance with plans and specifications which are to be prepared by Lessee at its expense. Said proposed plans and specifications (which shall be used by the general contractor for construction) when completed shall be initialed by the parties hereto, annexed and made a part hereof and shall be marked Schedule "B". Unless said plans and specifications shall be so initialed, annexed and made a part hereof this lease shall be null and void and of no effect. * * * 4. For the purposes of this lease, the demised premises shall be deemed to have been completed when Lessor's Work as provided for in Schedule "B" has been fully completed in accordance therewith and accepted in writing by the Lessee, which acceptance shall not be unreasonably withheld. Should the Lessor's Work as provided for in Schedule "B" be incomplete on the fifteenth (15th) day prior to Lessee's scheduled opening, Lessee may, upon five (5) days written notice *177 to Lessor, complete work and deduct the cost thereof from future rentals. 5 The space to be occupied by Friendly in the new building was to be erected by petitioner with a slab floor, four walls and a roof, heating and air conditioning facilities, an interior partition, and two rest rooms. Friendly agreed to complete the interior of their space in the new building, finishing it in hemlock paneling and installing the necessary booths, counters, and tables as well as kitchen equipment. The term of the lease between Friendly and petitioner was 12 years. The rent was $487.50 per month plus 2-1/2 percent of Friendly's gross sales exceeding $235,000 per year. The three other stores in petitioner's new building differed from Friendly's store in that they had cellars instead of being built on a slab. Also, petitioner finished the interior of the three other stores. Each of the three other stores had smaller ground floor space than the Friendly store. Petitioner sold his florist business to Henry Texeira, an employee of petitioner, and Texeira agreed to rent one of the three remaining stores in petitioner's new building. The lease with Texeira was entered into on December 29, 1965, and *178 was for a term of 3 years. In January 1966, the old buildings located on the Main Street property were demolished and the new building containing the four stores was erected. Shortly after the completion of the new building in May 1966, petitioner rented out the two remaining stores, one to a cosmetics shop and the other to a gift shop. Both of the latter two leases were for terms of 3 years. 6 The sum of petitioner's adjusted basis in the three old buildings and the cost of demolishing them in 1966 was $11,946.83. In 1966 petitioner paid $4,900 to the real estate agents representing Friendly as a commission for introducing him to Friendly. On their Federal income tax return for 1966 petitioners deducted from their rental income the entire amount of their demolition loss and the entire amount of the commission paid to the real estate agents representing Friendly. Respondent determined that the demolition loss should be capitalized and amortized over the 12-year life of petitioner's lease with Friendly and that the rental commission should also be amortized over the length of petitioner's lease with Friendly. OPINION Section 165(a), I.R.C. 1954, [1] provides that "There *179 shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Petitioners contend that they suffered a deductible loss in their taxable year 1966 as a result of the demolition of three old buildings on their property on Main Street in Hyannis, Massachusetts. The amount of petitioner's loss, the sum of the adjusted basis of the building and the cost of the demolition, is not contested by respondent, but its deducitibility in full in 1966 is contested. Section 1.165-3(b) (1) and (2) of the Income Tax regulations provide as follows: 7 (b) Intent to demolish formed subsequent to the time of acquisition. (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by *180 the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of section 1.165-1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished. (2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof. The evidence here is clear that the agreement between petitioner and Friendly which resulted in the lease was that the old buildings would be demolished. The real estate representative of Friendly who conducted the negotiations with petitioner specifically so testified. Petitioner did not deny that the agreement with Friendly contemplated demolition *181 of the old buildings although he stated that just the portion of the building used by Friendly could have been built without razing the old buildings and that the representative of Friendly did not in precise words state to him the old buildings must be razed. Petitioner's testimony is, in effect, that the agreement to raze the buildings was a part of the agreement between him and Friendly as to the type and location on the land of the new building. 8 In our view the inference from the record is that the lease between petitioner and Friendly provided for the demolition of the old buildings. The lease provided that a part thereof was Schedule A which was a map outlining the premises to be leased to Friendly and that a plan of the building to be constructed was to become a part of the lease as Schedule B. The copy of the lease placed in evidence does not contain Schedules A and B. However, petitioner testified that representatives of Friendly showed him plans for a building, and he showed them plans, and that agreement was reached on these plans prior to the date the lease was signed. The clear inference from this record is that Schedule A made a part of the lease showed the *182 new building situated in a manner which would require demolition of the old buildings. We therefore hold that petitioner demolished the three old buildings on his land pursuant to the requirements of his lease with Friendly and the requirements of his agreement with Friendly which resulted in the lease. Therefore, under respondent's regulations which we have recognized as valid, petitioner is not entitled to an ordinary loss deduction in 1966 for the $11,946.83 representing his adjusted basis in the three buildings demolished plus the demolition cost, but must amortize the deduction of this amount over the 12-year term of his lease with Friendly. [2] 9 Donald S. Levison, *183 59 T.C. (Feb. 21, 1973); Herman Landerman, 54 T.C. 1042 (1970), affirmed 454 F.2d 338 (C.A. 7, 1971), certiorari denied 406 U.S. 967; Foltz v. United States, 458 F.2d 600 (C.A. 8, 1972). Petitioner in his brief relies on Feldman v. Wood, 335 F.2d 264 (C.A. 9, 1964); Hightower v. United States, 463 F.2d 182 (C.A. 5, 1972); and the District Court holding in Foltz v. United States, 322 F.Supp. 414 (D.C.Ark., 1971) which was reversed by the Eighth Circuit Foltz v. United States, supra.
Both Feldman v. Wood, supra, and Hightower v. United States, supra, are distinguishable from the instant case in that in those cases the courts concluded that the demolition was not pursuant to the requirements of the lease, whereas here we have concluded that the demolition was pursuant to the requirements of the lease. As we pointed out in Herman Landerman (54 T.C. at 1048): We recognize that the language of the opinion of the Ninth Circuit Court of Appeals in Feldman v. Wood, supra, presents a rationale broader than that required by the facts. To the *184 extent that the rationale of that decision rests upon the presence of a formal mandatory obligation on the lessee to demolish, we must respectfully disagree. [footnote omitted]. In our opinion, such a straitjacket interpretation is unwarranted. * * * Therefore, if petitioner is relying on the language of Feldman v. Wood, to which we referred in the above quotation, this Court has respectfully refused to accept it. However, in this case, because a part of the lease, "Schedule A" thereof, is not in the record, it is far from clear that even the language of this part of the lease did not require the demolition of the old buildings. 10 Petitioner paid $4,900 in the taxable year 1966 to real estate agents who "introduced" Friendly to him. This introduction proved profitable to petitioner because it resulted in the 12-year lease discussed above. Petitioner in his petition alleged error in respondent's disallowance of his claimed deduction of these real estate fees from his rental income for the year 1966. This contention was not mentioned at the trial or in petitioner's brief, and it may be that he has abandoned it. In any event, it is settled that payments by a landlord *185 to brokers, agents, or others in securing leases for a term of years is not an ordinary and necessary expense that can be deducted in the year in which paid or incurred but must be recovered through ratable deductions over the term of the lease. Griffiths v. Commissioner, 70 F.2d 946 (C.A. 7, 1934), affirming 25 B.T.A. 1292 (1932). Accordingly, we sustain respondent's determination that petitioner is entitled to deduct only one-twelfth of the real estate fee in the year in issue. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩
2. It is apparent from the facts we have set forth that only one of the other stores was leased prior to demolishing the old buildings and that lease was for 3 years. However, petitioner does not contend that there should be any allocation of the $11,946.83 if we find that amortization is required by the Friendly lease. We therefore do not consider the issue that might have been, but was not, raised as to whether under the facts here some allocable portion of the $11,946.83 is a deductible loss in 1966. ↩