**B. T. HOLDER and Georgia L. Holder, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 71-1023.**

United States Court of Appeals, Fifth Circuit.

June 29, 1971.

Johnnie M. Walters, Asst. Atty. Gen., Donald B. Craven, Meyer Rothwacks, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., Stephen H. Hutzelman, Bennet N. Hollander, Attys., Dept. of Justice, Tax Div., Washington, D. C., for defendant-appellant.

Harold E. Abrams, G. Kimbrough Taylor, Jr., Atlanta, Ga., for plaintiffs-appellees; Kilpatrick Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., of counsel.

Before GEWIN, BELL, and MORGAN, Circuit Judges.

BELL, Circuit Judge.

This is an appeal from an order of the district court granting the taxpayers a loss deduction under § 165 of the Internal Revenue Code of 1954. 26 U.S.C.A. § 165. Taxpayers entered into a lease

with the Mead Corporation, pursuant to which the lessee had the right but not the obligation to demolish a building on the leased premises. The building was demolished and taxpayers sought to deduct the unrecovered cost basis of the demolished building. The deduction was disallowed, taxpayers paid the deficiency and filed a claim for refund of income taxes paid. The district court, sitting without a jury and upon a stipulated record, ruled that taxpayers were entitled to the loss deduction. This appeal followed. We reverse.

In 1963, the taxpayers leased to the Mead Corporation a certain parcel of real estate in Fulton County, Georgia, for a primary term of 99 years at an annual rental of $16,250.00. Paragraph 2 of Article IV of the lease provided:

> * * * Lessee may, during the term of this Lease, demolish any or all improvements now or hereafter located on the Leased Premises and may, from time to time during the term of this Lease, construct such improvements on the Leased Premises and make such changes, alterations and additions in any improvements from time to time located on the Leased Premises as in Lessee's sole judgment may seem desirable; PROVIDED, HOWEVER, that, upon the termination of this Lease, for whatever reason, there shall be at least 45,000 square feet of good warehousing and/or office space on the Leased Premises, which improvements shall be of brick, concrete and steel construction or be constructed of the equivalent or better building materials and shall have value of not less than one and one-half (1½) times the value of the improvements on the Leased Premises as of September 1, 1963, adjusted to reflect any change, either increase or decrease, in the value of money between September, 1963, and the date of termination of this lease. The parties agree that, for the pur-

poses of this paragraph 2 of Article IV, the value of the improvements as of September 1, 1963, is ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($125,000).

The parties stipulated that taxpayers' witnesses would have testified that the proviso in Paragraph 2 was included to protect the lessors in case the lessee demolished the buildings on the leased premises and then terminated the lease without restoring the improvements, and to compensate for the absence of any rental escalation during the 99 year term of the lease. Also, the parties stipulated that Mead officials would testify that at the time of the execution of the lease, Mead had no definite plans for the immediate use of the premises other than to utilize a portion thereof for parking space and to sublease the remainder for an indefinite period of time to persons who had been lessees of taxpayers prior to the execution of the lease.

In 1965, Mead demolished the improvements on the leased premises. The taxpayers' unrecovered cost basis at that time was $43,082.47. Mead then intended to build an administration building on the leased premises. It was to be financed by a loan from a feeder corporation to its employees' pension trust. However, Mead then discovered that fee simple title to the premises was necessary in order to obtain the financing. At that point, Mead and taxpayers entered into an agreement whereby Mead exchanged certain land it owned in return for the leased premises. The original lease was cancelled and a new lease was entered into whereunder Mead became the lessee of the property it had conveyed to taxpayers.[1]

The sole issue for review is whether taxpayers incurred a deductible loss in the amount of unrecovered cost, under § 165 of the Internal Revenue Code and the applicable regulations, when their lessee pursuant to the permissive terms

---

1. The rental under the new lease was increased from $16,250 annually for the 99 year term to $18,250 for ten years and $16,250 for the remaining years.

of the lease, demolished a building on the lease premises.

Section 165 of the Internal Revenue Code provides in pertinent part as follows:

> (a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

> (b) *Amount of Deduction.*—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

The district court allowed the deduction under § 165(a), relying primarily on Treasury Regulation § 1.165–3(b) (1) and (2), which provide:

> (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under § 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. * * *

> (2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of the demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof.

These regulations were applicable once the taxpayers satisfied the requisites of § 165: that taxpayers establish a loss "not compensated for by insurance or otherwise."

The district court was well aware of this requirement but concluded that the regulation in question, § 1.165–3(b) (1) dictated the necessary loss through the following provision:

> (1) * * * The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of § 1.165–1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished.

The district court reasoned that the disallowance of any transferred basis to the replacement buildings necessarily allowed the unrecovered cost basis as a deductible loss. We think this does not follow and it is at this point that we find ourselves in disagreement with the district court. Our view is that the portion of § 1.165–3(b) (1) on which the court relied is applicable only after a loss is established. For example, if there had been no right in the lease to demolish, could taxpayers claim a loss if they had been paid the amount of the remaining cost basis. The negative answer is obvious but here the answer, while not as simple, must be the same in light of the *quid pro quo* provision in the lease with respect to the lessee razing the building.

It is fundamental to § 165 that the taxpayer actually has to lose something before a loss deduction is allowable. See Blumenfeld Enterprises, Inc. v. Commissioner, 23 T.C. 665, aff'd per curiam, 232 F.2d 396 (9 Cir. 1956), in which the Tax Court said:

> "It is of course true that the destruction of a building may result in a deductible loss . . ., and Treasury regulations have long recognized that such deduction may be available. * * * However, it has been firmly established that not every destruction of a building results in a deduction, since none is available where the taxpayer has not sustained a loss by rea-

**1300**

son of the demolition. 23 T.C. at 670 (Citations omitted).

See also Mertens, Law of Federal Income Taxation, Vol. 5, § 28.05. It is also fundamental that the burden is on the taxpayer to establish the statutory basis for a deductible loss. Burnet v. Houston, 1931, 283 U.S. 223, 227, 51 S. Ct. 413, 75 L.Ed. 991.

Treasury Regulation § 1.165–1, the basic explanatory provision under § 165, indicates the proper analysis in this case. Subsection (b) states:

> (b) *Nature of loss allowable.* To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and complete transactions, fixed by identifiable events, and * * * actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

Did taxpayers actually sustain a bona fide loss? We think not and that to think otherwise would be to exalt form over substance.

 When Mead exercised its contractual right to demolish, all taxpayers could conceivably have lost was the unrecovered basis in the razed building ($43,082.47). In return for the right to demolish, taxpayers received the right to have the demolished buildings replaced without other buildings meeting certain specifications and value, adjusted to the cost of money in the interim. Par. 2, Article IV, supra. When the existing building was actually demolished in 1965, taxpayers lost certain annual depreciation ·deductions. They were compensated for their loss by the lessee's contractual duty to construct other improvements to be delivered to taxpayers at the termination of the lease. This was the bargain. Although taxpayers retained the right to depreciate the buildings on the premises at the begin-

ning of the lease, this right was bargained away in the event lessee chose to demolish the building.

In sum, we conclude that taxpayers were not entitled to a § 165 deduction. They were "otherwise" compensated for their demolition loss within the contemplation of § 165(a).[2]

Both taxpayers and the government rely on certain case law interpreting Treas.Reg. § 1.165–3(b) (2) in support of their positions. Feldman v. Wood, 335 F.2d 264 (9 Cir. 1964); Landerman v. Commissioner, 54 T.C. 1042 (1970); Revenue Ruling 67–410, 1967–2 Cum. Bull. 93. We do not reach these authorities in view of our finding that taxpayers failed to establish a loss under § 165(a).

Reversed and remanded for further proceedings not inconsistent herewith.

---

2. There was no contention in the district court that the *quid pro quo* received under Par. 2 of § IV of the lease was of less value than the remaining cost basis in the demolished property; hence there was no issue as to a *pro tanto* loss deduction based on the difference.