**Dr. Thomas P. FOLTZ and Eleanor Foltz, Appellees,**

v.

**UNITED STATES of America, Appellant.**

No. 71–1314.

United States Court of Appeals, Eighth Circuit.

April 20, 1972.

Daniel B. Rosenbaum, Atty., Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Grant W. Wiprud, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant; Bethel B. Larey, U. S. Atty., of counsel.

Ben Paddock, Warner, Warner, Ragon & Smith, Fort Smith, Ark., for appellees.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and WEBSTER, District Judge.*

MATTHES, Chief Judge.

This is an appeal by the government from a decision of the district court, after trial without a jury, that taxpayer Foltz [1] had sustained a deductible loss under the Internal Revenue Code of 1954 322 F.Supp. 414. The pertinent Code Section, 26 U.S.C. § 165(a), provides that "[t]here shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Also of some relevance are subsections (1) and (2) of Tr. Reg. 1.165–3(b):

> (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a . . . transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under Section 165(a) if the demolition occurs as a

---

*Of the Eastern District of Missouri, sitting by designation.

1. Appellee Eleanor Foltz is the owner-lessor of the real property involved in this case. Her husband, appellee Thomas P. Foltz, was joined as a plaintiff in the district court only because he and his wife filed a joint federal income tax return for 1963, the year here involved. We shall refer to appellee as Mrs. Foltz or taxpayer.

result of a plan formed subsequent to the acquisition of the buildings demolished. . . .

(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease . . ., no deduction shall be allowed to the lessor under Section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof.

Mrs. Foltz owns a parcel of land in Fort Smith, Arkansas, upon which was situated an office building. The building was valued for tax purposes in 1946 at $40,000. Its useful life, for depreciation purposes, was established at that time as 33⅓ years.

Mrs. Foltz and officers of the Fort Smith Parking Authority conducted negotiations during 1961, pursuant to which the parking authority sought to lease or purchase Mrs. Foltz' lot for the purpose of establishing thereon a multi-level parking facility. The negotiations ultimately were abandoned. We need note only the following facts pertaining to these negotiations: (1) one of the two parking authority representatives was McLoud Sicard; (2) according to the uncontroverted testimony of the second parking authority representative, Mrs. Foltz sought a monthly rental rate of $500 from the authority; and (3) according to the same testimony, Mrs. Foltz would not agree to inclusion of a demolition clause within the contemplated lease.

Mrs. Foltz subsequently entered into negotiations with the First National Bank of Fort Smith. The bank was represented throughout these negotiations by McLoud Sicard, its President, who had represented the municipal parking authority in the latter's dealings with Mrs. Foltz.[2] Sicard and Mrs. Foltz reached an agreement, pursuant to which an instrument was executed and the Foltz property was leased to the bank. The lease term is 15 years, commencing February 1, 1962, and terminating January 31, 1977. The bank agreed to pay rent in the sum of $9,000 annually, which would be equivalent to a monthly rate of $750. The bank was given an option to renew the lease for two successive 15-year terms. Further, the lease contained the following provisions:

> Lessee shall have the right to demolish and raze all or any part of the structure now on the lease premises at its own expense.

\*     \*     \*     \*     \*     \*

Any improvement constructed by lessee shall be first approved in writing by lessor. Any improvements permanently affixed to the realty shall become the property of lessor upon termination of the lease agreement and any extensions.

It is apparent from the record that the bank leased Mrs. Foltz' property in order to expand its own physical plant. A contractor employed by the bank after execution of the lease determined that it would not be feasible to connect by tunnel the existing bank building, which was situated upon a lot adjacent to the Foltz property, and the leased building. The bank subsequently caused the latter building to be demolished.

Demolition occurred in September, 1963, at which time Mrs. Foltz had an undepreciated cost basis in the building of $19,600. Mrs. Foltz and her husband filed a joint federal income tax return for 1963, claiming therein a deduction equal to the entire amount of the undepreciated basis. The deduction subsequently was disallowed. Mrs. Foltz then paid the deficiency assessed against her, filed a timely request for refund, and,

2. The second parking authority representative also was a director of the bank, but it is apparent that Mr. Sicard alone represented the bank in its negotiations with Mrs. Foltz.

**602**

when that claim was denied, filed a timely action in the district court.

The district court found that demolition had not been a specific subject of bargaining between Mrs. Foltz and the bank, and that "neither party . . . intended or contemplated that the office building would necessarily be demolished during the term of the lease." Relying upon Tr. Reg. 1.165–3(b) (1–2) and the construction given this regulation in Feldman v. Wood, 335 F.2d 264 (9th Cir. 1964), the district court held that a deductible loss had been incurred.

█ The basic issue for our consideration is whether the district court erred, as contended by the government, in allowing the taxpayer to claim a deductible loss for the entire amount of the undepreciated basis of the building in the year of its demolition. As a prelude to consideration of the contentions in this controversy we take note of the well settled principle that the burden is upon the taxpayer to establish the statutory basis for the deductible loss. Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991 (1931).

It is apparent from the memorandum opinion filed by the district court in this case that exclusive reliance was placed by that court upon Tr. Reg. 1.165–3(b), as construed in the *Feldman* case. In *Feldman*, as in the present case, the lessee demolished a building pursuant to a permissive demolition clause in the lease. The Court of Appeals for the Ninth Circuit, reversing a district court ruling in favor of the government, imposed a narrow construction upon the regulation. Subsection (2) of the regulation, which disallows deduction where demolition occurs pursuant to the *requirements* of the lease, was held not to embrace *permissive* demolition clauses. Subsection (1), which controls cases not affected by subsection (2), therefore was held to require allowance of the claimed

deduction. At least one other Court of Appeals has refused to adopt the *Feldman* rationale. In Landerman v. C. I. R., 454 F.2d 338 (7th Cir. 1971), the narrow approach of the Ninth Circuit was rejected for the following reason, among others:

> Initially, we observe nothing in the meaning of the word requirement itself which compels the narrow construction placed upon it by the Ninth Circuit. "Requirement" is defined as "something required, wanted, needed, called for or demanded; a requisite or essential condition." See Webster's Third New International Dictionary (Unabridged). Since the definition includes something which is wanted, needed or called for, only a restrictive interpretation of the word requirement would demand the presence of a formal mandatory undertaking.

454 F.2d at 340.[3]

We agree with the *Landerman* court that there is nothing in the language of Tr. Reg. 1.165–3(b) which mandates allowance of the deduction claimed in cases such as the present one. To hold otherwise, and thus require that deductions be allowed wherever a lessee demolishes pursuant to an optional clause, would be to subvert the underlying statutory mandate that only uncompensated losses be deductible, for a permissive demolition well might redound to the financial benefit of a lessor. Indeed, the opinion in *Feldman* recognizes that the construction there placed upon the regulation might allow deduction where demolition profitable to the lessor has occurred. 335 F.2d at 266. We agree with the following pronouncement from *Landerman:*

> Even assuming arguendo that the language of the regulation is sufficiently ambiguous to support constructions which are both consistent and inconsistent with the statute, it is the consistent construction which must be preferred for a regulation not consistent

3. The *Feldman* approach was rejected also, at least by implication, in Holder v. United States, 444 F.2d 1297 (5th Cir. 1971).

with the statute would, of course, be void. Koshland v. Helvering, 298 U.S. 441, 446–447, 56 S.Ct. 767, 80 L.Ed. 1268 (1936); United States v. Korpan, 237 F.2d 676, 682 (7th Cir. 1956).

454 F.2d at 342.

Quite apart from the regulation, however, the critical question in this case is whether the taxpayer sustained an uncompensated loss within the meaning of 26 U.S.C. § 165(a) by reason of the demolition of the building in 1963. Holder v. United States, 444 F.2d 1297 (5th Cir. 1971). Upon consideration of all relevant factors, we hold she did not bring herself within the ambit of § 165.

We note first that in 1961, the year before the present lease was executed, Mrs. Foltz was willing to lease her realty to the Fort Smith Parking Authority for a monthly rental of $500. Taxpayer's testimony indicates that a demolition clause was to have been included in the lease; one parking authority negotiator testified that Mrs. Foltz refused to include such a clause. The rent promised under the subject lease is 50 per cent greater than that which would have satisfied the lessor during the preceding year. The discrepancy in rental rates, coupled with the fact that a demolition clause was included in the lease executed, would suggest strongly that whatever objections Mrs. Foltz might have had to inclusion of a demolition clause in the proposed parking authority lease were dissolved by the additional rent promised her under the terms of the bank lease. This conclusion is supported by the fact that Mr. Sicard, who participated in the parking authority negotiations and thus was aware of Mrs. Foltz' posture during those negotiations on the matters of rent and demolition, also conducted negotiations for the bank prior to execution of the present lease.

It is significant also that the rental rate under the subject lease remains constant notwithstanding the fact of demolition. This indicates to us, as Mrs. Foltz in fact affirmed during her testimony, that the annual rent "covered the property, whether the building was there or not."

costs of any demolition occurring pursuant to the lease. This, as noted in *Landerman,* is another indication that lessor has received something in exchange for her accession to demolition, because these costs otherwise would have fallen ultimately upon the lessor. 454 F.2d at 341.

It is also significant that the premises with any improvements erected thereon during the term of the lease will revert to the lessor. In this connection the evidence shows that a new drive-in banking facility has been constructed on the lot formerly occupied by the demolished building.

Finally, as the government concedes, the taxpayer will not lose the undepreciated cost basis of the building. She is entitled to amortize that cost as a capital expense over the term of the lease.

■ To summarize, the taxpayer did not sustain an uncompensated loss within the meaning of § 165(a) of the Internal Revenue Code of 1954. She gave up her right to retain the building by a specific provision permitting its demolition. In return she was guaranteed an annual rent of not less than $9,000, regardless of whether the building remained or was removed. The demolition stemmed from the lease which was negotiated at arm's length, and the value of the building was thus a part of the value of acquiring the lease, so that the undepreciated value of the building must be amortized over the term of the lease and such value cannot be taken as a loss in the year in which the building was demolished. In short, the taxpayer has recovered *quid pro quo* for the demolished building. The taxpayer has failed to carry the burden of establishing the statutory basis for a deductible loss. Accordingly, we reverse and remand with directions to dismiss the taxpayer's complaint.

WEBSTER, District Judge (dissenting).

I must respectfully dissent. I would follow Feldman v. Wood, 335 F.2d 264

(9th Cir. 1964) rather than Landerman v. C. I. R., 454 F.2d 338 (7th Cir. 1971) upon which the majority opinion relies.

### I

As noted in *Landerman*, the applicable regulations as initially proposed under the 1954 Code, § 1.165(1) (b) Proposed Income Tax Regulations, were silent as to demolition losses within the context of a lease. New regulations proposed in 1959 provided that upon a demolition "pursuant to the terms of a lease" no loss deduction would be allowed but the adjusted basis of the demolished building could be amortized over the term of the lease. See § 1.165(3) (d) Proposed Income Tax Regulations, 24 Federal Register 8177, 8180 (1959). As noted in *Landerman*, the phrase "pursuant to the terms of a lease" became "pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease" in the regulation finally promulgated.

For me, the word "requirements" means nothing less than that which mandates a specific act or forbearance. I do not find in the dictionary definition cited in *Landerman* and in the majority opinion any words which connote "taken into consideration" or "contemplated" or "anticipated". I do not construe the option available exclusively to the lessee without modification of any of its rights or undertakings elsewhere contained in the lease to be a "requirement" as that word is used in the regulation. To speculate upon what the parties anticipated would occur by reference to earlier negotiations seems to me to be akin to the admission of parole evidence to alter or vary the terms of an unambiguous written instrument. The history of the regulation itself supports this conclusion. If the authors had intended to exclude from the provisions of § 165 all demolitions which were contemplated (and necessarily permitted) under the provisions of a lease, the originally proposed language "pursuant to the terms of a lease" would have been adequate for such purpose. Therefore,

I would hold, under the lease agreement in this case, that the demolition of the building did not take place "pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease".

Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes. Commissioner of Internal Revenue v. South Texas Lumber Co. (1948), 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831.

No less of an authority than Mertens has had no difficulty in reaching a similar interpretation of the plain meaning of the regulation:

> "The Regulations under the 1954 Code hold that the owner of leased premises on which *the lessee had a right to demolish buildings* in order to construct other improvements *may deduct* as a loss his basis for the buildings demolished by the lessee. Where the demolition is 'pursuant to the requirements of a lease' *no loss is allowable.*" (Emphasis added.)

Vol. 4 Mertens Law of Federal Income Taxation § 23.89, and again at § 28.22 Supp.:

> "A different rule applies if demolition is permitted, not required, under the term of the lease. No loss is allowable when the demolition is 'pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease'. However, if the lessee has a right to demolish buildings in order to construct new improvements, the owner *may deduct* as a loss his basis in the buildings demolished by the lessee."

The majority opinion suggests (see footnote 3) that the *Feldman* approach was rejected at least by implication in Holder v. United States, 444 F.2d 1297 (5th Cir. 1971). I must respectfully disagree. In *Holder,* the lessee had an obligation to replace the demolished buildings with certain new facilities according to a prescribed footage and quality and having a value of not less than 1½ times the value of the improvements on

the premises as of the beginning of the term, reduced by any change in the value of the dollar. The value of such initial improvements was set forth by stipulation in the lease. In this case, however, we have no such *quid pro quo*. The bank had no obligation to construct any improvements, nor could the lessee exercise any control whatever over the size, quality or cost of such improvements. She reserved only the right to such improvements at the termination of the lease. The office building which the bank demolished was in good condition and was good business rental property at the time of the lease, substantial repairs having recently been made by the taxpayer which included redecorating and the installation of furniture and fixtures. The replacement improvements consisted of a parking lot and two drive-in teller windows. The teller windows would have value only to a bank. This was certainly no *quid pro quo*, and the subsequent improvements were not bargained for as the price of the right to demolish. Moreover, I find in *Holder* substantial support for my conclusion in this case. As the court said in *Holder* (page 1298):

> "The sole issue for review is whether taxpayers incurred a deductible loss in the amount of unrecovered costs, under § 165 of the Internal Revenue Code and the applicable regulations, when their lessee pursuant to the permissive terms of the lease, demolished a building on the leased premises.
>
> \* \* \* \* \* \*
>
> The district court allowed the deduction under § 165(a), relying primarily on Treasury Regulation § 1.-165–3(b) (1) and (2), \* \* \*.
>
> *These regulations were applicable once the taxpayers satisfied the requirements of § 165:* that taxpayers establish a loss 'not compensated for by insurance or otherwise.'" (Emphasis supplied.)

While in *Holder,* the court found that no loss had been sustained because of the presence of a contractual *quid pro quo* in the lease agreement, it recognized

that the regulations would have been applicable had a loss been established. This is more consistent with *Feldman* than *Landerman,* which tortures the plain meaning of the regulation in order to avoid its natural consequences.

In *Landerman,* the lessee erected a $2½ million multi-story parking garage and branch bank. The tax court found that the demolition of the existing building was at all times considered by the parties an underlying condition of the lease in reaching their agreement, thus in effect holding that the demolition occurred "pursuant to the \* \* \* requirements of an agreement which resulted in a lease, \* \* \*" Treasury Regulations 1.165(1) (b) (2). While the majority opinion in this case speculates that the taxpayer, Mrs. Foltz, was persuaded to accept the demolition clause by an enhancement of the rental rate, nothing in the record refutes Judge Williams' finding that "neither party \* \* \* intended or contemplated that the office building would necessarily be demolished during the term of the lease". Foltz v. United States, 322 F.Supp. 414 at 416.

The record discloses that the bank as lessee made a unilateral decision to demolish the building after determining that it would not be feasible to connect the existing bank building on an adjacent lot to the building in question by tunnel. Unquestionably, the demolition occurred "as a result of a plan formed subsequent to the acquisition of the buildings demolished \* \* \*" Tr. Reg. 1.165–3(b) (1). Subparagraph (1) thus clearly purports to allow a deduction under § 165(a) under such circumstances, except as provided in subparagraph (2). Subparagraph (2), which is the "pursuant to the requirements of a lease" exception, denies the full deduction in one year but permits it to be amortized over the life of the lease. It is significant that the regulation is not couched in terms which would deny deductions for lease demolitions except under certain circumstances, but instead affirmatively states that the deduction

will be allowed unless the building was demolished "pursuant to the requirements of a lease".

Hightower v. U. S., 27 Am.Fed.Tex R.2d 71-900 (M.D.Fla.1971) is a recent case quite similar on its facts to the case before us. The lease clause gave the lessee the right to demolish buildings having a useful life of approximately twenty-five years, without obligation to replace or pay any other consideration in the event of such demolition. In a well reasoned analysis, the trial court reviewed *Feldman, Holder,* the trial court opinion in *Foltz* and the tax court decision in *Landerman,* 54 T.C. 1042 (1970), and concluded, as I do in this case that *Feldman* should be followed. In *Hightower,* the building was demolished within two months after lessee took possession. The new building was more valuable than the old. The court rejected the argument that no economic loss had been sustained.

## II

It is contended that notwithstanding the language of the regulation, the taxpayer did not sustain during the taxable year a loss uncompensated for by insurance or otherwise as required by § 165 of the Internal Revenue Code. The taxpayer must, of course, bring herself within the provisions of the statute in order to deduct the unrealized depreciation in the year of demolition. See United States v. Olympic Radio & Television, 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024 (1955); New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).

In *Landerman,* the court found a number of possible valuable benefits flowing from a demolition, including the lessor's right to large rental payments, his acquisition of a lump sum payment from the lessee, the substitution of a more valuable building by a lessee, or the lessee's payment of demolition costs otherwise payable by the lessor. This approach, in my judgment, attempts to substitute an evaluation of incidental benefits which may or may not inure to the lessor, together with a court determina-

tion that such benefits offset the destruction of a depreciable asset. In my view, the destruction of the building must be separately analyzed and not lumped with benefits which were not mandated by the lease as result of such demolition.

Under the lease, defendant retained title to the building, and it would have been hers upon the expiration of the term or lessee's earlier forfeiture of the lease. When it was destroyed, she lost the right to possess and enjoy it at the expiration of the term. Until such time, if ever, as the lessee exercised its option to destroy the building, the taxpayer retained the right to claim annual depreciation for tax purposes. Lessee had no obligation to replace the building or to pay lessor in cash or in kind for its destruction. Any improvements to the premises erected by lessee will not become the property of the lessor until the expiration of the lease.

## III

I conclude then that a loss was sustained in the year in which the building was destroyed, causing lessor to lose her right to repossess it at the termination of the lease. Treasury Regulation 1.165–3(b), rationally applied, produces a result consistent with the statute. Where the lessor bargains with and has the right to require the demolition of the building by the lessee, the loss will be presumed to be otherwise offset in the agreed rental amount. Where, however, there is no such requirement, the loss should be properly recognized in the year in which the demolition occurred. I would, therefore, on the facts in this case, affirm the district court judgment in favor of the taxpayer.

I feel further obliged to note that *Feldman* was decided by the Ninth Circuit in 1964. Since that time, the Commissioner of Internal Revenue has made no effort to clarify the language of the regulation, notwithstanding his non-acquiescence in *Feldman* and the division in the Circuits which now obtains. Regulations which are relied upon by taxpayers and the attorneys and accountants

who advise them in the preparation of income tax returns should illuminate, not obfuscate the statutes to which they are applicable. The destruction of depreciable leased property by one other than the owner is prima facie a loss to the owner under § 165. As in the case of contracts authored by one party, I would construe the limiting language of the regulation most strongly against the author, provided such construction is, as I believe it to be, consistent with the statute itself.