YATES MOTOR COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yates Motor Co. v. Commissioner
Docket No. 4230-73.
United States Tax Court
T.C. Memo 1975-285; 1975 Tax Ct. Memo LEXIS 89; 34 T.C.M. (CCH) 1235; T.C.M. (RIA) 750285; September 15, 1975, Filed Dick L. Lansden and William Martin, for the petitioner. Wesley J. Lynes, for the respondent. FAY
MEMORANDUM FINDINGS OF FACTS AND OPINION FAY, Judge: Respondent determined a deficiency of $3,599.72 in petitioner's income tax for the year 1968. We are to decide whether petitioner is entitled to deduct as a loss the adjusted basis of a building demolished in that year. FINDINGS OF FACT Some of the facts were stipulated and are so found. Yates Motor Company (petitioner) is a Tennessee corporation organized in 1950. Its principal place of business was at Hendersonville, Tennessee, when the petition herein was filed. Petitioner filed its Federal income tax return for the year 1968 on June 18, 1969, with the Director, *90 Internal Revenue Service Center, Chamblee, Georgia. At all times relevant, petitioner's president and sole shareholder was E. A. Yates (Yates). He actively managed its day-to-day operations. From its formation until August 1968 petitioner was engaged in the business of selling and servicing new Ford automobiles and trucks, and selling used cars of all makes. During this time petitioner's business was situated in a building specifically designed for that purpose at the corner of Gallatin Road and Due West Avenue, Nashville, Tennessee. In August 1968 petitioner transferred the dealership and all of its property, with the exception of the building and land on which it stood, to a new corporation, Yates Ford, Inc., in exchange for stock in the new corporation. The adjusted basis of the building was $27,475.28 at the close of 1967. Before the transfer to the new location, Yates employed a real estate agent in April 1967 to act in his behalf in finding a suitable tenant for the old accommodation. Yates was advised by the real estate agent that the property was suitable for an automobile service station and that a lease with an oil company seemed a likely and attractive prospect. After *91 discussing the advice with his son-in-law, Yates instructed his agent to pursue that course of action. It was clear from the beginning that the automobile showroom then present on the property was entirely unsuitable as a service station facility and that the building would have to be demolished to make way for a new structure. After negotiations, petitioner extended an option to lease the property to Mobil Oil Company (Mobil) on August 27, 1968. The terms of the agreement provided for a 15 year lease at an annual rental of $16,200, payable in monthly installments of $1,350. Regarding improvements existing on the land at the time the option was signed, the agreement allowed either party to remove existing structures from the land at his own expense without accountability to the other. Along with the Mobil option, an agreement was also drawn between petitioner and Burger King Corporation whereby a smaller portion of the land would be leased to Burger King Corporation if Mobil exercised its option. Subsequent to the signing of the option agreement, Yates had a meeting with Mobil's real estate representative where it was agreed that petitioner would remove the automobile dealership *92 building from the land at his own expense. Mobil did not exercise its rights to lease the property, and the option lapsed on December 27, 1968. On September 1, 1968, petitioner's board of directors met and approved a tentative agreement with Shell Oil Company (Shell) [1] under which the property would be leased to Shell for a term of 15 years at annual rental of $19,800. Also approved was a tentative agreement with Tennessee Ernie Ford Foods, Inc., for the remaining portion of the land at an annual rental of $9,000 yearly. Additionally, the minutes made specific mention of the board's recognition that there was no further need for the building owned by petitioner. In October 1968, Yates' son-in-law commenced demolition of the building without charge to petitioner *93 in consideration of the salvageable components of the demolished building. Demolition was completed by April 1969. On March 27, 1969, Shell entered an option to lease the land on the same terms as were approved at petitioner's September 1968 board meeting. The terms of this lease specifically provided that petitioner would remove all structures from the land at his own expense. Shell exercised the option on June 20, 1969, and commenced construction of an automobile service station on November 3, 1969. Tennessee Ernie Ford Foods, Inc., entered into a lease for the smaller remaining portion of the property on June 18, 1969. On its Federal corporate income tax return for 1968 petitioner deducted as a loss the entire adjusted basis of $27,475.28 in the demolished building. In his notice of deficiency respondent disallowed the loss and determined a deficiency of $3,599.72. OPINION The sole issue presented is whether petitioner is entitled to deduct as a loss the amount of the adjusted basis of the demolished building or must instead capitalize and amortize the amount over the term of the lease to Shell. The resolution of this issue depends on whether the demolition of the building *94 was contemplated by parties to the lease when they were negotiating its terms. If demolition of the structure was within the contemplation of the parties, then the adjusted basis of the demolished building may not be deducted as a loss under section 165(a) and the regulations adopted pursuant to that section. [2]Donald S. Levinson,59 T.C. 676 (1973); Herman Landerman,54 T.C. 1042 (1970), affd. 454 F.2d 338 (7th Cir. 1971); Laurene Walker Berger,7 T.C. 1339 (1946); Foltz v. United States,458 F.2d 600 (8th Cir. 1972). *95 Yates asserts that the prospect of leasing the property had no influence on his decision to demolish the building, and that he made the decision to do so independently and prior to entering negotiations with either Mobil or Shell. Viewing the record as a whole, however, we cannot agree. When Yates decided to lease the property to an oil company in accordance with the advice supplied him by his son-in-law and real estate agent, he was fully aware that the building could not be utilized by any oil company tenant desiring to operate a service station and was therefore aware that, at some point, the building would have to be taken down. When petitioner reached a tentative agreement with Shell, the building was still standing; but shortly thereafter, it was demolished. In March 1969 petitioner gave Shell an option to lease the property under terms of which petitioner bore the costs of demolition. After careful examination of this sequence of events, we conclude that demolition of the building was an important element in the negotiations for the Shell lease and was clearly associated with the final agreement reached by the parties. We therefore hold that the demolition must be considered *96 as a part of the cost of obtaining the lease. Herman Landerman,supra.
Accordingly, we sustain respondent's determination that petitioner is not entitled to an ordinary loss deduction but must amortize the $27,475.28 adjusted basis of the demolished building over the 15 year term of the Shell lease. Decision will be entered for the respondent.
Footnotes
1. Obviously petitioner was not at liberty to enter into a formal agreement with Shell at this time since the Mobil option had not yet lapsed. However, the record indicates that Yates' son-in-law had been conducting negotiations with Shell on petitioner's behalf, and the minutes of this meeting confirm the fact that some sort of tentative agreement between Shell and petitioner had been reached as early as September 1968.↩
2. SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Income Tax Regs., sec. 1.165-3(b)(2) provides: (2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof. (Emphasis supplied.) Petitioner relies on Feldman v. Wood,335 F.2d 264 (9th Cir. 1964) in support of his contention that the language of the regulation should be narrowly construed. However, in Herman Landerman,54 T.C. 1042 (1970) this Court declined to follow the restrictive interpretation given the regulation in Feldman v. Wood,supra.The Seventh and Eighth Circuits are in accord with our position as expressed in this opinion. See Landerman v. Commissioner,454 F.2d 338 (7th Cir. 1971) and Foltz v. United States,458 F.2d 600 (8th Cir. 1972). The Fifth Circuit, on the other hand, follows Feldman.See Hightower v. United States,463 F.2d 182 (5th Cir. 1972). The Sixth Circuit to which appeal would lie in this case has not yet taken a position. See Barry v. United States,501 F.2d 578, 584↩ n. 8 (6th Cir. 1974).